**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**BERNARDO FIGUEROA**

**v.** **C.A. No. 05 - 415 T**

**ASHBEL T. WALL**, et al.

**Report and Recommendation**

Jacob Hagopian, Senior United States Magistrate Judge

Plaintiff Bernardo Figueroa, *pro se*, filed an Amended Complaint pursuant to 42 U.S.C. § 1983 alleging a deprivation of his constitutional rights. Plaintiff named has defendants Ashbel T. Wall, Director of the Rhode Island Department of Corrections, Joseph A. DiNitto, Associate Director of the Rhode Island Department of Corrections, and Thomas Sullivan, an employee at the Rhode Department of Corrections.

This matter is before the Court on the motion of the defendants to dismiss. Plaintiff has not objected thereto. This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for a report and recommendation. For the reasons that follow, I recommend that the defendants' motion to dismiss be **granted**.

**I. Background**

Plaintiff is an inmate legally incarcerated at the Rhode Island Department of Corrections ("RI DOC"), Adult Correctional Institutions ("ACI"). The following are the factual allegations culled from the Amended Complaint:

**A. Factual Allegations in the Amended Complaint Occurring from June 1997 through October 6, 2002.**

In June 1997, plaintiff alleges the RI DOC transferred him from Maximum Security general population to High Security segregation due to an investigation conducted by the RI DOC's Special Investigation Unit. Plaintiff alleges that he thereafter appeared before a classification board which recommended that he be returned to Maximum Security general population. However, plaintiff alleges that the then Director of the RI DOC, George Vose, rejected the board's recommendation and the plaintiff remained in segregation. Plaintiff next alleges that he appeared before a classification board again in January 1998, and again Vose rejected the recommendation of the board, which apparently recommended a more favorable classification.

In 1999, plaintiff alleges that he and the RI DOC entered into an agreement whereby the RI DOC agreed to transfer the plaintiff to a correctional facility located in the state of New Jersey.[1] However, plaintiff alleges that RI DOC instead transferred him to a confinement facility in Virginia in retaliation for exercising his First Amendment rights.

Plaintiff alleges that when he initially arrived in Virginia,

---

[1] This allegation is patently false. This issue has be litigated and re-litigated. Plaintiff and the RI DOC agreed to transfer the plaintiff to a facility outside of New England. No agreement was made to transfer the plaintiff to New Jersey.

he was confined at the Powhatan Correctional Center, where he alleges he was subjected to "cruel and vicious punishment." See Amended Complaint ¶ 10. Thereafter, on March 2, 2000, plaintiff alleges he was transferred to the Wallens Ridge State Prison ("Wallens Ridge") in Virginia. While at Wallens Ridge, plaintiff alleges that he was shot with a gun, denied medical and dental care, and subjected to cruel and inhumane treatment.

Plaintiff alleges that on September 26, 2001, he was transferred the Sussex State Prison ("Sussex") in Virginia. While at Sussex, plaintiff alleges that he was denied medical care, dental care, and "sadistically brutalized [and] terrorized." See id. Plaintiff alleges that in June of 2000, the plaintiff wrote to the defendants complaining of the conditions he faced but they refused to relocate him to another prison.

**B. Factual Allegations in the Amended Complaint Occurring from October 7, 2002 through October 2005.**

Plaintiff alleges he was transferred, at some point in time not mentioned in the Amended Complaint, to the Red Onion State Prison ("Red Onion") in Virginia. From January 2005 through October 2005, plaintiff alleges that, while at Red Onion, his sleep was disrupted and that he was often strip-searched, restrained, and threatened by correctional officers. Plaintiff also alleges that he was denied visitation privileges, telephone privileges, confined to a constantly illuminated cell 23-24 hours

a day, and that he was not permitted to attend or participate in religious services nor was he permitted access the law library.

Plaintiff alleges that, during the past eight years, defendants have classified him as a "C" status inmate while in Virginia, which resulted in confinement in "isolation sensory deprivation units" in Virginia. See Amended Complaint at ¶ 19. Plaintiff alleges that the defendants conducted his classification hearings in Rhode Island, while he was in Virginia, and did not provide him the opportunity to present information relevant to his classification, challenge the evidence against him or call and cross-examine witnesses.

On October 16, 2005, plaintiff was returned to the Adult Correctional Institutions in Rhode Island for court proceedings and to receive medical care. Plaintiff alleges that the defendants intend to transfer him back to Virginia, despite their knowledge of the conditions which exist in Virginia's prison system.

## II. Discussion

### A. 42 U.S.C. § 1983

Plaintiff has brought this action pursuant to 42 U.S.C. § 1983. Section 1983 provides, in pertinent part:

> Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to

> the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. Section 1983 creates a cause of action for persons who are denied a federally protected right. See, e.g., Baker v. McCollan, 443 U.S. 137 (1979) (constitutional deprivations); Maine v. Thiboutot, 448 U.S. 1 (1980) (statutory deprivations). The initial inquiry in a Section 1983 action is (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether the conduct deprived the plaintiff of a constitutional right or a federal statutory right. Gomez v. Toledo, 446 U.S. 635, 640 (1980).

Here, however, defendants filed a motion to dismiss, challenging plaintiff's Amended Complaint on a few fronts. First, they contend that some of the allegations are barred by the applicable statute of limitations. Second, they contend that all of the allegations are barred by the doctrine of res judicata. And finally, notwithstanding the res judicata bar to the asserted claims, defendants contend that the allegations fail to state a claim upon which relief can be granted. Plaintiff has not objected to the motion.

**B. Statute of Limitations**

As their first basis for dismissal of claims against them, defendants assert that some of the claims are barred by the applicable statute of limitations. In actions brought pursuant to 42 U.S.C. § 1983, to determine the appropriate limitation period,

federal courts borrow the forum state's personal injury statute of limitations. Owens v. Okure, 488 U.S. 235 (1989). The applicable statute of limitations in this jurisdiction is R.I. Gen. Laws 9-1-14(b), which provides for a three year limitations period. See R.I. Gen. Laws 9-1-14(b).

Here, plaintiff filed his Complaint on October 7, 2005. Accordingly, Plaintiff's claims which arise from the facts, events and/or conditions which occurred from June 1997 through October 6, 2002 are time barred and should be dismissed. See *Supra* I, A. I so recommend.

**C. Res Judicata**

Next, defendants have moved to dismiss all of plaintiff's claims under the doctrine of res judicata and cite as a basis Figueroa v. Wall, C.A. No. 01-137 T (hereinafter referred to as "Figueroa I" for purposes of this Report and Recommendation) and Figueroa v. Wall, C.A. No. 04-358 ML (hereinafter referred to "Figueroa II" for purposes of this Report and Recommendation).

Under the federal law of res judicata, a final judgement on the merits of an action precludes the parties from re-litigating claims that were raised or could have been raised in that action. Porn v Nat'l Grange Mut. Ins. Co., 93 F.3d 31, 34 (1st Cir. 1996). Res judicata promotes judicial efficiency and prevents "claim-splitting" by requiring litigants to assert all of their factual and legal theories pertaining to their claim the first time they

come to court. Kale v. Combined Ins. Co. Of America, 924 F.2d 1161, 1165 (1st Cir. 1991)(internal quotes omitted).

The rules for res judicata, where a federal court is considering the effect of its own prior disposition of a federal claim on a newly brought federal claim, are a matter of federal law. Apparel Art Int'l, v. Amertex Enters., 48 F.3d 576, 582 (1st Cir. 1995). The rules have developed through judicial decision, drawing on common law res judicata as it has developed over time. AVX Corp. v. Cabot Corp., 424 F.3d 28, 30 (1st Cir. 2005). Before res judicata will apply, three factors must be present: "(1) a final judgement on the merits in the earlier action; (2) an identity of the cause of action in both earlier and later suits; and (3) an identity of the parties or privies in the two suits." Maher v. GSI Lumonics, Inc., 433 F.3d 123, 127 (1st Cir. 2005) citing Kale, 924 F.2d at 1156.

A final judgement for res judicata purposes "end[s] the litigation on the merits and [leaves] nothing for the court to do but execute the judgement." AVX Corp., 424 F.3d at 32. Here, there is no question that final judgements on the merits entered in both Figueroa I and Figueroa II. Thus, the first hurdle is satisfied. Second, the parties in the Figueroa I, Figueroa II, and the instant action are sufficiently identical, satisfying the second hurdle. Accordingly, the only hurdle that remains is whether the cause of action in Figueroa I and/or Figueroa II is sufficiently

identical to the instant suit.

In defining the cause of action for res judicata purposes, this circuit has adopted the "transactional" approach. Porn, 93 F.3d at 34. Under this approach, a valid and final judgement in the first action will extinguish subsequent claims "with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Id. (internal quotes omitted). To determine what pragmatically constitutes a transaction, such factors as "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations" are considered. Porn, 93 F.3d at 34.

In Figueroa I, a case filed on March 23, 2001, plaintiff complained of the conditions at the Virginia prisons where he was confined. Notably, in Figueroa I, plaintiff was confined at Wallens Ridge and Sussex. In the instant case, plaintiff too makes allegations and complains about the conditions he faced at Wallens Ridge and Sussex during the same time frame as in Figueroa I. Thus, plaintiff's allegations, insofar as they relate to the same allegations and time frame as in Figueroa I, are sufficiently related in time, space and origin to instant case.

In Figueroa II, a case filed on August 20, 2004, plaintiff complained about the conditions he faced at Wallens Ridge, Sussex and Red Onion. Plaintiff alleged that, from 2002 through December

2004, he was housed in a cell that was illuminated twenty-four hours a day, denied medical care, assaulted by correctional officers, had his legal material destroyed, and had devices implanted in his ears.

Similarly, in the instant case, plaintiff alleges he was subjected to numerous restrictions and unconstitutional conditions at the Wallens Ridge, Sussex and Red Onion prisons, that he was confined in a cell that was constantly illuminated, and that he was strip-searched, restrained and assaulted by correctional officers. In addition, plaintiff alleges that, for the past eight years, constitutional infirmities have occurred during his classification proceedings.

Here, I find that the allegations contained in Figueroa II and the instant case are also sufficiently related in time, space, and origin to all of the claims made in the instant case. Plaintiff's claims in Figueroa II and the instant case revolve around the same conditions he has faced while incarcerated in Virginia.

Having determined that Figueroa I and Figueroa II are sufficiently related in time, space and origin to the claims asserted in the instant case, I shall consider the next prong, whether the facts form a convenient trial unit. Porn, 93 F.3d at 35. This factor, aimed at conserving judicial resources, provides that where the witnesses or proof needed in the second action substantially overlap with those in the first action, the second

action should ordinarily be precluded. Id. Here, Figueroa's claims and the facts asserted in the complaints are similar and therefore witnesses and exhibits would also have been same. Accordingly, this prong is satisfied.

Finally, the court must consider whether treating the cases an one conforms to parties' expectations. Here, plaintiff filed the same claims based upon the same facts spanning three different lawsuits. Therefore, one would reasonably conclude that the case be brought only once.

Accordingly, I find that Figueroa I, Figueroa II and the instant lawsuit are sufficiently identical. Therefore, the instant lawsuit is barred by res judicata and should be dismissed. I so recommend.

**D. Rule 12(b)(6)**

Finally, defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), contending that the facts alleged fail to rise to a violation of the plaintiff's constitutional rights. However, considering that all of the plaintiff's claims have been, or could have been brought in an earlier action and thus are barred by the doctrine of res judicata, I do not reach the question of whether the facts alleged state a claim upon which relief can be granted.

## III. Conclusion

Accordingly, I recommend that the defendants' motion to dismiss be granted. Any objection to this Report and Recommendation

must be specific and must be filed with the Clerk of Court within ten days of its receipt. Fed. R. Civ. P. 72(b); LR Cv 72(d). Failure to filed timely, specific objections to this report constitutes waiver of both the right to review by the district court and the right to appeal the district court's decision. United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1986) (per curiam); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

Jacob Hagopian
Senior United States Magistrate Judge
December 19 , 2006